PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ADRIAN LORENZO CERVANTES-ALVAREZ,<br><br>    Defendant. | CASE NO. 3:20-CR-00259-CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Sentencing Date: April 9, 2025<br>Sentencing Time: 10:00 a.m. |

## I. INTRODUCTION

Defendant Adrian Lorenzo Cervantes-Alvarez was charged in an Information with Deported Alien Found in the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The parties have reached a proposed plea agreement, and this case is set for a change of plea and sentencing on April 9, 2025. Under the advisory Sentencing Guidelines, the defendant is subject to a sentence of between 57 and 71 months. In accordance with the proposed plea agreement, the United States recommends that the defendant be sentenced to 36 months because this sentence is sufficient but not greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a). Although the defendant's immigration offense is serious and warrants a meaningful custodial sentence, the defendant is already serving a 33-year-to-life prison sentence based on his conduct while on pretrial release in this case. So, a conviction and

sentence here will not necessarily prolong his custodial sentence, and he will likely be removed from the United States after serving his lengthy prison sentence. The defendant has also accepted responsibility for the charged immigration offense and will waive his right to challenge the validity of the underlying removal orders. Given these specific considerations and the sentencing objectives in 18 U.S.C. § 3553(a), the defendant should be sentenced to 36 months to be served concurrently with his 33-year-to-life state prison sentence.[1] Indeed, a 36-month sentence appears to be the median custodial sentence imposed on other defendants with the same offense level and criminal history category.

## II. BACKGROUND

### A. Circumstances of the Offense

In 2007, the defendant was convicted of vandalism in the Sonoma County Superior Court and, as a result, was deported to Mexico. The defendant then unlawfully reentered the United States. In 2009, the defendant was convicted of (1) forcible rape, (2) false imprisonment, and (3) criminal threats in the Sonoma County Superior Court (Case No. SCR-545509). He was sentenced to four years in state prison. In 2012, after completing his state prison sentence, the defendant was again deported to Mexico. After his deportation in 2012, the defendant again unlawfully reentered the United States, and his unlawful presence in the country is the basis for the immigration offense charged in the Information.

### B. Procedural History

On January 20, 2020, in the Northern District of California, the defendant was charged in an Information with one count of Deported Alien Found in the United States in violation of 8 U.S.C. §§ 1326(a), (b)(2). On May 28, 2020, during the pandemic, the defendant made an initial appearance on the Information. He was later released on bail on June 3, 2020. While out on bail, the defendant was arrested after stabbing his wife in the neck with a pair of scissors and slamming her head to the ground. Consequently, in the Solano County Superior Court, the defendant was convicted of attempted murder, assault with a deadly weapon, and infliction of corporal injury to a spouse in 2024. He was sentenced to 33 years to life in state prison. He was recently transported to federal court on a writ to resolve the

---

[1] The factual assertions in this brief are based on the Pre-Plea Modified Presentence Investigation Report and the proposed plea agreement.

United States' Sentencing Memorandum  2
3:20-CR-00259-CRB

instant immigration offense. And the parties have reached a proposed plea agreement, which has been submitted to the Court for review.

### C. Sentencing Guidelines Calculation

As detailed in the proposed plea agreement, the following sets forth the parties' offense level calculation:

    a. Base Offense Level, U.S.S.G. §2L1.2(a) (unlawfully entered the United States):  8

    b. Specific offense characteristics under U.S.S.G. Ch. 2

        U.S.S.G.§2L1.2(b)(2)(B) (before defendant was deported, he committed a felony for which he was sentenced to two years or more)  +8

        U.S.S.G.§2L1.2(b)(3)(A) (after defendant was deported, he committed a felony for which he was sentenced to five years or more)  +10

    c. Acceptance of Responsibility:  -3

        If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

    d. Adjusted Offense Level:  23

U.S. Probation has determined that the defendant has six criminal history points (Criminal History Category III) but was not tasked with conducting an independent Sentencing Guidelines calculation. PSR at 9. Nevertheless, based on the parties' offense level calculation and the Pre-Plea PSR, it appears that the defendant is subject to a Sentencing Guidelines range of 57 to 71 months.

### III. DISCUSSION

#### A. Legal Standards

The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th

Cir. 2008); *see also* 18 U.S.C. § 3553(a).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines.  *Id*.

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) The nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.    Sentencing Recommendation by the United States**

The United States recommends that the Court sentence the defendant to 36 months to be served concurrently with his 33-year-to-life state prison sentence.  A term of supervised release is not warranted given that the defendant will likely be deported from the United States after serving his lengthy state prison sentence and, if he not deported, he will likely be on state parole supervision.

**1.    Nature and circumstances of the defendant's offense and his history and characteristics**

The defendant's repeated immigration law violations and his violent criminal history warrant a 36-month sentence.  Regarding the nature and circumstances of the offense, the defendant has twice been deported and has twice unlawfully reentered the United States.  Thus, the defendant has fragrantly violated the nation's immigration laws, which are intended to keep the community safe.

Indeed, if the defendant had refrained from unlawfully reentering the United States following his deportations, he would not have been able to commit a series of violent crimes in this country.  Specifically, after he was deported in 2007, the defendant unlawfully reentered the United States.  He was then convicted of rape, false imprisonment, and criminal threats in 2009, and was sentenced to four

years in state prison. Then, after serving that prison sentence and being deported again in 2012, the defendant unlawfully reentered the United States a second time. And while on pretrial release in this case, the defendant was convicted of attempted murder, assault with a deadly weapon, and infliction of corporal injury on a spouse in 2024. Thus, the defendant's immigration law violations have had dire consequences—the defendant was able to roam freely in the community and commit these heinous acts.

The defendant's violent criminal record is also concerning because it shows his pattern of abusing his girlfriend or domestic partner. Regarding his 2009 convictions, the defendant raped his girlfriend after forcing her to remain inside his home, brandishing a knife, chocking her several times, and threatening to kill her. Regarding his 2024 convictions, the defendant stabbed the mother of his children multiple times in the neck with a pair of scissors and then slammed her head on the ground/concrete several times in the presence of their children. The seriousness of his latest criminal offenses is reflected in his substantial prison sentence of 33 years to life. Aside from these convictions, the defendant was also arrested for battery on his spouse in 2020. Thus, the defendant's criminal history shows his propensity for extreme violence towards his girlfriend or domestic partner.

Nevertheless, the defendant has taken responsibility for the instant immigration offense and will waive his right to challenge the validity of his prior removal orders. Additionally, the defendant is currently serving a 33-year-to-life sentence (*i.e.*, an indeterminate life sentence), so the conviction and sentence in this case will not necessarily prolong his custodial sentence. Further, assuming the defendant is granted parole by the State of California at some point in the future, he will likely be deported from the United States for a third time.

Accordingly, based on the foregoing considerations, the United States recommends that the defendant be sentenced to 36 months to be served concurrently with his 33-year-to-life sentence.[2]

### 2. Need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Based on the particular facts in this case, a 36-month sentence also reflects the seriousness of the defendant's immigration offense, promotes respect for the law, and constitutes just punishment.

---

[2] Because the parties only requested a Pre-Plea Modified PSR, the report does fully detail other aspects of the defendant's life that could have provided mitigating information, such as his family or work history, or a statement from the defendant about his acceptance of responsibility.

**3.    Need for the sentence to afford adequate deterrence to criminal conduct**

Imposing at 36-month custodial sentence on the defendant also promotes general deterrence because it sends a strong message to the public that those who violate the nation's immigration laws can face a significant prison sentence.  It will also serve as a specific deterrence to the defendant, who now knows that he will face increasing custodial time for any future immigration law violations.

**4.    The need for the sentence imposed to protect the public from further crimes by the defendant**

A 36-month custodial sentence is, moreover, warranted to protect the public from further crimes by the defendant.  And given that he is serving a 33-year-to-life sentence in state prison, the defendant will be unable to commit crimes in the community for decades.

**5.    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

Further, a 36-month sentence is consistent with the punishment imposed for similarly situated defendants.  Based on data from the Judicial Sentencing Information (JSIN) website[3], during the last five fiscal years (FY2019-2023), there were 51 defendants whose primary guideline was §2L1.2, with a Final Offense Level of 23 and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure.  For the 51 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 38 months and the median length of imprisonment imposed was 36 months.

Therefore, the United States' recommended sentence of 36 months is the median sentence imposed on similarly situated defendants (and is 2 months less than the 38-month average sentence imposed).  Therefore, the United States' 36-month recommended sentence would avoid unwarranted sentencing disparities.

/ / /

/ / /

/ / /

---

[3] https://jsin.ussc.gov/analytics/saw.dll?Dashboard

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence the defendant to 36 months.

DATED:        April 2, 2025                    Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney


*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney